UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
ALVARO SESAM, CARLOS ALVAREZ, EDMIN GARMENDIA,
WILFREIDO LEON, JAIME LOBOS, WILLIAM MARTINEZ,
SANTIAGO MARCOS MORALES, HINMER MORENO, NEYS
REYES MONTERO, FIDEL OCHOA, LUIS SUICA, ALEX
ZAPATA, and JOSE ZELAYA, individually and on behalf of all
others similarly situated,

CIVIL ACTION NO.

Plaintiffs,

COMPLAINT

-against-

SUPERIOR STONE & INTERIORS, LLC, KONSTANTINOS
MANASAKIS, and PAUL COLLINS,

Defendants.
--------------------------------------------------------------------------------X

Plaintiffs Alvaro Sesam, Carlos Alvarez, Edmin Garmendia, Wilfreido Leon, Jaime Lobos,

William Martinez, Santiago Marcos Morales, Hinmer Moreno, Neys Reyes Montero, Fidel Ochoa,

Luis Suica, Alex Zapata, and Jose Zelaya, individually and on behalf of all others similarly

situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Superior Stone

& Interios, LLC ("SSI"), Konstantinos Manasakis, and Paul Collins, respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

1.      This is an action seeking equitable and legal relief for Defendants' violations of the

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York

Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"), and the Internal Revenue Code, 26 U.S.C. §

7434.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action

arising under the FLSA and 26 U.S.C. § 7434.

3.      This Court has supplemental jurisdiction over the claims arising under New York

state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related

to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.    Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.    Plaintiffs are individuals residing in the State of New York.

6.    At all relevant times, Plaintiffs were employed by Defendants.

7.    While employed by Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.    Plaintiffs are covered employees within the meaning of the FLSA and NYLL.

9.    SSI is a domestic corporation with its principal place of business located at 31 Lamar Street, West Babylon, New York 11704.

10.    Upon information and belief, Manasakis and Collins are individuals residing in the State of New York.

11.    At all relevant times, Manasakis and Collins were and still are officers, directors, shareholders, owners, and/or persons in control of SSI, who exercise significant control over SSI's operations and had the authority to hire, fire, and discipline their employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

12.    At all relevant times, Defendants were responsible for setting Plaintiffs' schedules and day-to-day activities and for supervising their performance.

13.     At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

14.     At all relevant times, Defendants were responsible for compensating Plaintiffs.

15.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

16.     Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

17.     Defendants operate in interstate commerce.

18.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

19.     The First and Third Causes of Action in this Complaint, which arise out of the FLSA, are brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed by Defendants during the relevant time period and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

20.     The FLSA Collective Plaintiffs consist of no less than forty (40) similarly situated current and former employees of Defendants who, during their employment with Defendants, earned less than the federal minimum wage and work or worked in excess of forty (40) hours per week and who were damaged due to Defendants' common policy and practices in violation of the FLSA including, *inter alia*, willfully denying them minimum and overtime wages.

21.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees minimum wages and their proper overtime rates.

22.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

23.     Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

24.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

**IV. Rule 23 Class Allegations**

25.     Plaintiffs bring the Second, Fourth, Fifth, Sixth, and Seventh Causes of Action under the NYLL on behalf of themselves and all similarly situated employees who were employed by Defendants since the date six (6) years prior to the filing of the Complaint (the "Class Period") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

26.     All said persons are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are

presently within the sole control of Defendants, upon information and belief, there are no less than one hundred (100) members in the Class.

28.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime wages; failing to pay minimum wages; failing to timely pay wages; failing to provide payroll notices; and failing to provide wage statements. Defendants' company-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiffs are represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy --- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants.

31.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

32.     Because the losses, injuries, and damages suffered by each of the individual Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

33.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

34.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a.     Whether Defendants employed Plaintiffs and the Class within the meaning of the NYLL;

b.      Whether Defendants failed to pay Plaintiffs and the Class overtime compensation for all hours worked in excess of forty (40) hours per workweek;

c.      Whether Defendants failed to pay Plaintiffs and the Class the statutory minimum wage for all hours worked under the NYLL.

d.      Whether Defendants unlawfully failed to timely pay Class members their earned wages, in violation of NYLL § 191(1)(a)(i);

e.      Whether Defendants unlawfully failed to provide Class members with payroll notices at the start of their employment, or at any point thereafter, in violation of NYLL § 195(1);

f.      Whether Defendants unlawfully failed to provide Class members, with each wage payment, a statement listing their rates of pay and basis thereof and anything otherwise required by NYLL § 195(3);

g.      Whether Class members are entitled to damages, and if so, the means of measuring such damages;

h.      Whether Defendants are liable for Class members' attorneys' fees and costs; and

i.      Whether Defendants are liable for liquidated damages.

**V.  Factual Allegations**

<u>Alvaro Sesam</u>

36.      Defendants employed Sesam as a tile installer from on or around March 1, 2019 until on or around January 1, 2020.

37.      As a tile installer, Sesam's primary job duties included mixing adhesive and cement, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

38.      Throughout his employment with Defendants, Sesam regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a 30 minute daily meal break, for a total of approximately forty (40) hours per week.

39.     Approximately once a month, Sesam would also work Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a 30 minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Sesam worked on Saturdays.

40.     Throughout Sesam's employment, Defendants neither tracked the hours Sesam worked nor required Sesam to record his time.

41.     Throughout Sesam's employment, Defendants compensated Sesam at a fixed rate of $220.00 per day, regardless of the number of hours he worked, including those hours worked over forty (40) per week.

42.     Throughout Sesam's employment, Defendants paid him every week by check with no accompanying paystub.

43.     Defendants failed to pay Sesam any wages for his last five (5) days of work.

<u>Carlos Alvarez</u>

44.     Defendents employed Alvarez as a tile installer from on or around December 1, 2020 until on or around March 1, 2022.

45.     As a tile installer, Alvarez's responsibilities included mixing adhesive and cement, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

46.     Throughout his employment, Alvarez regularly worked six (6) days per week, Mondays through Saturdays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a thirty (30) minute daily break, for a total of approximately forty-nine and one-half (49.5) hours per week.

47.     Throughout Alvarez's employment, Defendants neither tracked the hours Alvarez worked nor required Alvarez to record his time.

48.     Throughout Alvarez's employment, Defendants compensated Alvarez at a fixed rate of $260.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

49.     Throughout Alvarez' employment, Defendants paid him every week by check with no accompanying paystub.

50.     Defendants failed to pay Alvarez any wages for his last forty (40) days of work.

<u>Edmin Garmendia</u>

51.     Defendants employed Garmendia as a tile installer from on or around July 30, 2020 until in or around April 2022.

52.     As a tile installer, Garmendia's responsibilities included mixing adhesive and cement, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

53.     Throughout his employment, Garmendia regularly worked five (5) days a week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute break for a total of approximately forty (40) hours per week.

54.     Additonally, Garmendia regularly worked one (1) additional hour once a week after his shift for w hich he was not compensated, bringing his total hours to approximately forty-one (41) per week.

55.     Throughout Garmendia's employment, Defendants neither tracked the hours he worked nor required Garmendia to record his time.

56.     Throughout Garmendia's employment, Defendants compensated Garmendia at a fixed rate of $175.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

57.     Throughout his employment, Defendants paid Garmendia every week by check with no accompanying paystub.

58.     Defendants failed to pay Garmendia for his last fifteen (15) days of work.

Wilfreido Leon

59.     Defendants employed Leon as a tile installer from in or around May 2020 until in or around November 2020.

60.     As a tile installer, Leon's responsibilities included mixing adhesive and cement, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

61.     Throughout his employment with Defendants, Leon regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

62.     Approximately once a month, Leon also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Leon worked on Saturdays.

63.     Throughout Leon's employment, Defendants neither tracked the hours he worked nor required Leon to record his time.

64.     Throughout Leon's employment, Defendants compensated Leon at a fixed rate of $230.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

65.     Throughout Leon's employment, Defendants paid him every week by check with no accompanying paystub.

66.     Defendants failed to pay Leon for his last five (5) days of work.

<u>Jamie Lobos</u>

67.     Defendants employed Lobos as an assistant to the supervisor from on or around July 30, 2020 until on or around April 8, 2022.

68.     As an assistant to the supervisor, Lobos' primary job duties included looking after the employees that were working, helping the supervisor with their tasks, mixing adhesive and cement, installing tiles on floors and walls, and cleaning up project sites.

69.     Throughout his employment, Lobos would regularly work five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

70.     On approximately three (3) occasions, Lobos also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Lobos worked on Saturdays.

71.     Throughout Lobos' employment, Defendants neither tracked the hours he worked nor required Lobos to record his time.

72.     From on or around July 30, 2020 until in or around February 2021, Defendants compensated Lobos at a fixed rate of $300.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

73.     From in or around February 2021 until in or around April 2021, Defendants compensated Lobos at a fixed rate of $250.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

74.     From in or around April 2021 until the end of his employment, Defendants compensated Lobos at a fixed rate of $280.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

75.     Throughout Lobos' employment, Defendants paid him every week by check with no accompanying paystub.

76.     Defendants failed to pay Lobos for his last thirty (30) days of work.

<u>William Martinez</u>

77.     Defendants employed Martinez as a tile installer from in or around August 2021 until in or around October 2021.

78.     As a tile installer, Martinez's responsibilities included mixing adhesive cement, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

79.     Throughout his employment with Defendants, Martinez regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

80.     Approximately once a month, Martinez also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Martinez worked on Saturdays.

81.     Throughout Martinez's employment, Defendants neither tracked the hours he worked nor required Martinez to record his time.

82.     Throughout his employment, Defendants compensated Martinez at a fixed rate of $220.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

83.     Throughout Martinez's employment, Defendants paid Martinez every week by check with no accompanying paystub.

84.     Defendants failed to pay Martinez for his last twenty-five (25) days of work.

<u>Santiago Marcos Morales</u>

85.     Defendants employed Morales as tile installer from in or around May 2021 until in or around December 2021.

86.     As a tile installer, Morales' responsibilities included mixing cement and adhesives, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

87.     Throughout his employment with Defendants, Morales regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

88.     Approximately twice a month, Morales also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Morales worked on Saturdays.

89.     Throughout Morales' employment, Defendants neither tracked the hours he worked nor required Morales to record his time.

90.     Throughout Morales' employment, Defendants compensated Morales at a fixed rate of $250.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

91.     Througout his employment, Morales was typically paid his wages every week by check with no accompanying paystub.

92.     Defendants failed to pay Morales for his last thirty-two (32) days of work.

Hinmer Moreno

93.     Defendants employed Moreno as as tile installer from in or around May 2017 until in or around January 2021.

94.     As a tile installer, Moreno's responsibilities included mixing cement and adhesives, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

95.     Throughout his employment with Defendants, Moreno regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

96.     Approximately twice a month, Moreno also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Moreno worked on Saturdays.

97.     Throughout Moreno's employment, Defendants neither tracked the hours he worked nor required Moreno to record his time.

98.     Throughout Moreno's employment, Defendants compensated him at a fixed rate of $250.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

99.     Defendants failed to pay Moreno for his last seventeen (17) days of work.

100.    From the beginning of his employment until in or around March 2020, Moreno was typically part of his wages by check and part in cash, with no accompanying paystub.

101.    From in or around June 2020 until the end of his employment, Moreno was paid every week entirely by check.

102.    Defendants issued IRS Forms W-2 to Moreno for the tax years 2017 through 2020 that only reflected the wages Defendants paid to Moreno via check.

103.    As a result, the IRS Forms W-2 that Defendants issued to Moreno for the tax years 2017 through 2020 did not reflect all of the wages that Defendants paid to Moreno during each such year.

104.    Upon information and belief, Defendants filed the IRS Forms W-2 issued to Moreno for the tax years 2017 through 2020 with the IRS.

105.    When Defendants filed Moreno's IRS Forms W-2 with the IRS, Defendants knew that the forms did not reflect all of the wages that Defendants had paid to Moreno in each tax year.

106.    Defendants willfully filed false information returns with the IRS, in violation of 26 U.S.C. § 7434.

<u>Neys Nixael Reyes Montero</u>

107.    Defendants employed Montero as a tile installer assistant from on or around July 30, 2020 until in or around April 2022.

108.    As a tile installer assistant, Montero's responsibilities included mixing cement and adhesives, supporting the tile installers, and cleaning up project sites.

109.    Throughout his employment with Defendants, Montero regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

110.    Approximately once a month, Montero also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Montero worked on Saturdays.

111.    Throughout Montero's employment, Defendants neither tracked the hours he worked nor required Montero to record his time.

112.    Throughout Montero's employment, Defendants compensated Montero at a fixed rate of $160.00 per day regardless of the number of hours he worked, including those hours worked over forty (40) per week.

113.    Throughout his employment, Montero was typically paid his wages every week by check with no accompanying paystub.

114.    Defendants failed to pay Montero for his last seventeen (17) days of work.

<u>Fidel Ochoa</u>

115.    Defendants employed Ochoa as a tile installer from in or around June 2020 until in or around November 2021.

116.    As a tile installer, Ochoa's responsibilities included mixing cement and adhesives, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

117.    Throughout his employment with Defendants, Ochoa regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

118.    Approximately twice a month, Ochoa also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Ochoa worked on Saturdays.

119.    Throughout Ochoa's employment, Defendants neither tracked the hours he worked nor required Ochoa to record his time.

120.     Throughout Ochoa's employment, Defendants compensated Ochoa at a fixed rate of $270.00 per day regardless of the number of hours he worked, including those over forty (40) per week.

121.     Throughout his employment, Ochoa was typically paid his wages every week by check with no accompanying paystub.

122.     Defendants failed to pay Ochoa for his last twelve and a half (12.5) days of work.

Luis Suica

123.     Defendants employed Suica as a tile installer from on or around July 30, 2020 until in or around April 2022.

124.     As a tile installer, Suica responsibilities included missing cement and adhesives, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

125.     Throughout his employment with Defendants, Suica regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

126.     Approximately once a month, Suica also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Suica worked on Saturdays.

127.     Throughout Suica's employment, Defendants neither tracked the hours he worked nor required Suica to record his time.

128.     Throughout his employment, Defendants compensated Suica at a fixed rate of $270.00 per day regardless of the number of hours he worked, including those over forty (40) per week.

129.     Throughout his employment, Suica was typically paid his wages every week by check with no accompanying paystub.

130.     Defendants failed to pay Suica for his last seventeen (17) days of work.

<u>Alex Zapata</u>

131.     Defendants employed Zapata as a tile installer from in or around November 2019 until in or around May 2021.

132.     As a tile installer, Zapata's responsibilities included mixing cement and adhesives, installing tiles on floors and walls, general construction duties, and cleaning up project sites.

133.     Throughout his employment with Defendants, Zapata regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

134.     Approximately once a month, Zapata also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Zapata worked on Saturdays.

135.     Throughout Zapata's employment, Defendants neither tracked the hours he worked nor required Zapata to record his time.

136.     Throughout his employment, Defendants compensated Zapata at a fixed rate of $220.00 per day regardless of the number of hours he worked, including those over forty (40) per week.

137.     Throughout his employment, Zapata was typically paid his wages every week by check with no accompanying paystub.

138.     Defendants failed to pay Zapata for his last ten (10) days of work.

### Jose Zelaya

139.    Defendants employed Zelaya as a tile installer assistant from in or around April 2021 until in or around October 2021.

140.    As a tile installer assistant, Zelaya's responsibilities included mixing cement and adhesives, supporting the tile installers, and cleaning up project sites.

141.    Throughout his employment with Defendants, Zelaya regularly worked five (5) days per week, Mondays through Fridays, from approximately 7:00 a.m. to approximately 3:30 p.m., with a daily thirty (30) minute meal break, for a total of approximately forty (40) hours per week.

142.    Approximately twice a month, Zelaya also worked Saturdays from approximately 8:00 a.m. to approximately 4:30 p.m., with a thirty (30) minute meal break, for a total of approximately forty-eight (48) hours per week on the weeks Zelaya worked on Saturdays.

143.    Throughout Zelaya's employment, Defendants neither tracked the hours he worked nor required Zelaya to record his time.

144.    Throughout his employment, Defendants compensated Zelaya at a fixed rate of $150.00 per day regardless of the number of hours he worked, including those over forty (40) per week .

145.    Throughout his employment, Zelaya was typically paid his wages every week by check with no accompanying paystub.

146.    Defendants failed to pay Zelaya for his last twenty-two (22) days of work.

### All Plaintiffs

147.    At all relevant times, Plaintiffs, the FLSA Collective Plaintiffs, and the Class were non-exempt employees pursuant to the FLSA and/or the NYLL and were entitled to be paid at

least the applicable minmum wage rate for all hours worked and overtime compensation for the hours they worked in excess of forty (40) hours per week.

148.     At times during their employment with Defendants, Plaintiffs, the FLSA Collective Plaintiffs, and the Class were paid no wages for the work they performed, in violation of the minimum wage provisions of the FLSA and NYLL.

149.     Moreover, despite routinely working more than forty (40) hours per week, Plaintiffs, the FLSA Collective Plaintiffs, and the Class were not paid overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of forty (40) per week.

150.     Furthermore, Defendants failed to timely pay Plaintiffs and the Class their wages as required by NYLL § 191(1)(a)(i).

151.     Defendants also failed to furnish to Plaintiffs and the Class a payroll notice at the time of hire, or at any time thereafter, containing Plaintiffs' and the Class' rates of pay, the designated payday, or other information required by NYLL § 195(1).

152.     Defendants also failed to furnish to Plaintiffs and the Class, with each wage payment, an accurate statement listing their regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

153.     Defendants violated federal and state law by willfully failing to pay Plaintiffs, the FLSA Collective Plaintiffs, and the Class overtime compensation; by failing to timely pay Plaintiffs and the Class their full wages every week; by failing to provide Plaintiffs and the Class with the required payroll notices and wage statements; by reporting fraudulent information to the IRS in violation of 26 U.S.C. § 7434 regarding Moreno; and by failing to pay Plaintiffs their wages for work performed for Defendants which is breach of contract to all Plaintiffs.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Overtime Violations under the FLSA)*

154.　　Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

155.　　Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for all hours worked in excess of forty (40) hours per week.

156.　　Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

157.　　Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for each hour worked in excess of forty (40) hours per week.

158.　　As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

159.　　As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to additional damages equal to one hundred percent (100%) of the total amount of wages due ("liquidated damages").

160.　　Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid

overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS**
*(Overtime Violations under the NYLL)*

161.     Plaintiffs repeat and reallege all prior allegations set forth above.

162.     Pursuant to the applicable provisions of the NYLL, Plaintiffs and the Class were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

163.     Plaintiffs and the Class regularly worked in excess of forty (40) hours per week during their employment with Defendants.

164.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the Class overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours per week.

165.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class the required overtime wages, Plaintiffs and the Class have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

166.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the Class are entitled to liquidated damages.

167.     Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Second Cause of Action in the amount of Plaintiffs' and the Class' unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Minimum Wage Violations Under the FLSA)*

168.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

169.     Pursuant to the applicable provision of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to receive at least the statutory minimum hourly wage for all hours they worked.

170.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at least the statutory minimum wages for all hours worked.

171.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required minimum wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid  minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

172.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

173.     Judgment should be entered in favor to the Plaintiffs and against the Defendants on the Third Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS,
INDIVIDUALLY, AND THE CLASS**
*(Minimum Wage Violations under the NYLL)*

174.     Plaintiffs repeat and reallege all prior allegations set forth above.

175.     Pursuant to the applicable provisions of the NYLL, Plaintiffs and the Class were entitled to receive at least the statutory minimum wage for all hours worked.

176.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the Class at least the statutory minimum wages for all the hours they worked.

177.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class the required minimum wages, Plaintiffs and the Class have been damaged and are entitled to recover from Defendants all unpaid minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

178.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs and the Class are entitled to liquidated damages.

179.     Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Fourth Cause of Action in the amount of Plaintiffs and the Class' unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS,
INDIVIDUALLY, AND THE CLASS**
*(Failure to Timely Pay Wages Under the NYLL)*

180.     Plaintiffs repeat and reallege all prior allegations set forth above.

181.     Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs and the Class were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

182.     During the relevant period, Defendants routinely failed to pay Plaintiffs and the Class all of their earned wages in accordance with the agreed-upon terms of employment.

183.     During the relevant period, Defendants failed to timely pay Plaintiffs and the Class all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

184.     Throughout the relevant time period, Defendants failed to pay Plaintiffs and the Class all earned wages in violation of NYLL § 191(1)(a)(i).

185.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class in accordance with NYLL § 191(1)(a)(i), Plaintiffs and the Class have been damaged and are entitled to recover from Defendants all wages due, along with reasonable attorneys' fees, interest, and costs.

186.     Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Fifth Cause of Action for all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS
*(Failure to Provide Payroll Notices Under the NYLL)*

187.     Plaintiffs repeat and reallege all prior allegations set forth above.

188.     Defendants failed to furnish to Plaintiffs and the Class, at the time of hire or at any time thereafter, notices containing the rate or rates of pay and basis thereof; allowances, if any

claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195(1).

189.     As Defendants failed to provide Plaintiffs and the Class with payroll notices as required by NYLL § 195(1), Plaintiffs and the Class are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

190.     Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Sixth Cause of Action in the form of liquidated damages amounting to $50.00 per day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS
*(Failure to Provide Wage Statements Under the NYLL)*

191.     Plaintiffs repeat and reallege all prior allegations set forth above.

192.     Throughout the relevant period, Defendants failed to furnish to Plaintiffs and the Class, with each wage payment, a statement listing: the regular hourly rates of pay; overtime rates of pay; number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; and net wages; in violation of NYLL § 195(3).

193.     As Defendants failed to provide Plaintiffs and the Class with wage statements as required by NYLL § 195(3), Plaintiffs and the Class are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

194.     Judgment should be entered in favor of Plaintiffs and the Class and against Defendants on the Seventh Cause of Action in the form of liquidated damages amounting to $250.00 per day for every day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

### AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF MORENO
*(Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434)*

195.     Plaintiffs repeat and reallege all prior allegations set forth above.

196.     Throughout the relevant period, Defendants regularly paid Moreno part of his wages by check with withholdings for federal, state, and local taxes, and part of his wages in cash without any withholdings for federal, state, and local taxes.

197.     Defendants provided Moreno with a copy of the IRS Forms W-2 that Defendants filed with the IRS each calendar year, which reflected only those wages that Defendants paid to Moreno by check.

198.     An IRS Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

199.     Defendants were aware of their duty to accurately report to the IRS all wages paid to Moreno.

200.     Defendants were aware that the IRS Forms W-2 Defendants filed for Moreno did not reflect the wages Defendants paid to Moreno in cash.

201.     Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS Forms W-2 with false information regarding the wages to Moreno, thereby decreasing Defendants' tax liability.

202.     As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Moreno is entitled to damages in an amount equal to the greater of $5,000.00 or

the sum of any actual damages sustained by Moreno for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

203.    Judgment should be entered in favor of Moreno and against Defendants on the Eighth Cause of Action in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Moreno for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

**WHEREFORE** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, pray for relief as follows:

a)  on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b)  on the Second Cause of Action on behalf of Plaintiffs and the Class for all overtime wages due to Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c)  on the Third Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for for all minimum wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d)  on the Fourth Cause of Action on behalf of Plaintiffs and the Class for all minimum wages due to Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e)  on the Fifth Cause of Action on behalf of Plaintiffs and the Class for all wages due Plaintiffs and the Class, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

f)  on the Sixth Cause of Action on behalf of Plaintiffs and the Class for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney fees in an amount to be determined by this Court;

g)  on the Seventh Cause of Action on behalf of Plaintiffs and the Class for liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees in an amount to be determined by this Court;

h)  on the Eighth Cause of Action on behalf of Moreno for damages in the amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Moreno, and attorneys' fees in an amount to be determined by this Court;

i)  interest;

j)  costs and disbursements; and

k)  such other and further relief as is just and proper.

Dated:  New York, New York
        February 15, 2023

*/s/ Eliseo Cabrera*
Eliseo Cabrera
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
edcabrera@katzmelinger.com
*Attorneys for Plaintiffs*
